IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ORION DRILLING COMPANY, LLC,<br>        Plaintiff,<br><br>        v.<br><br>EQT PRODUCTION COMPANY,<br>        Defendant. | Civil Action No. 16-1516<br>Magistrate Judge Maureen P. Kelly<br><br>Re: ECF No. 342 |

## OPINION AND ORDER

**KELLY, Magistrate Judge**

Pending before the Court is EQT's Motion for Attorneys' Fees and Related Costs filed on behalf of Defendant EQT Production Company ("EQT"). ECF No. 342. EQT brings its motion pursuant to Federal Rule of Civil Procedure 54(d), and seeks recovery of attorneys' fees and costs incurred and paid in defense of the instant action. For the reasons that follow, the Court grants EQT's motion, and awards attorney's fees and the amount of $1,920,823.06, and related costs in the amount of $854,535.73.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

This action was commenced by Plaintiff Orion Drilling Company, LLC ("Orion"), against EQT alleging that EQT breached a series of contracts pursuant to which Orion agreed to build and operate two drilling rigs, referred to as Rig 17 and Rig 18, at various EQT well sites for a specified number of days. Orion claimed that as a result of EQT's alleged breaches, it was entitled to liquidated damages of $32,102,000, plus pre-judgment interest and attorneys' fees.

The parties aggressively litigated Orion's claims over the course of two and one-half years, and conducted extensive discovery, including over three dozen depositions of fact witnesses. The parties exchanged twelve expert witness reports and deposed five experts. Discovery disputes led to numerous discovery motions, motions to compel, and related motions for sanctions. Prior to trial, the parties filed or responded to eleven motions in limine and filed briefs in support or in opposition to each. In addition, the parties filed trial memoranda regarding legal issues not previously resolved, as well as extensive pretrial statements summarizing evidence and legal theories, and identifying witnesses and trial exhibits. Thereafter, the Court conducted a two-week jury trial which resulted in a verdict in favor of EQT as to Orion's breach of contract claims. ECF No. 329. The Court entered judgment in EQT's favor on February 1, 2019. ECF No. 330.

On February 15, 2019, EQT filed a Motion for Attorneys' Fees and Costs (the "Motion"). ECF No. 342. The Motion is based on the express provision in Section 7.15 of the underlying Drilling Contracts, that "[i]n the event of litigation to enforce this contract, the prevailing party shall be entitled to attorneys' fees." ECF No. 1-3 at 13. As the prevailing party, EQT claims it is entitled to recover all attorneys' fees and related expenses incurred and paid in defense of this action. Accordingly, EQT seeks an award of $1,920,823.06 in attorney's fees and $854,535.73 in related expenses incurred and paid during the period October 1, 2016 through January 31, 2019. EQT also filed a Brief in Support, ECF No. 343, that included declarations and the invoices of Meyer, Unkovic & Scott LLP ("Meyer Unkovic") and Reed Smith LLP ("Reed Smith"), ECF Nos. 343-1 to 343-6.

In support of the instant Motion, EQT has submitted the Declaration of lead trial counsel Patricia L. Dodge, a former partner at Meyer Unkovic.[1] ECF No. 343-5. Meyer Unkovic is a well-

---

[1] On May 21, 2019, the United States District Court for the Western District of Pennsylvania announced that its Board of Judges selected Patricia L Dodge to serve as a United States Magistrate Judge for the Western District of

respected complex commercial litigation firm located in Pittsburgh, Pennsylvania. Attorney Dodge is a nationally recognized trial attorney, and a distinguished member of the International Academy of Trial Lawyers, the American College of Trial Lawyers, and the Academy of Trial Lawyers of Allegheny County. Attorney Dodge was assisted by partner Caleb M. Turner, four associates and two paralegals. Attorney Dodge's participation in the early stages of this action was strategic and advisory, providing analysis, advice and consultation to co-counsel Reed Smith. After the close of fact discovery, Attorney Dodge and Meyer Unkovic assumed the role of lead trial counsel, taking and defending expert depositions, participating in meetings with trial witnesses, drafting pre-trial filings including the pretrial statement, trial related motions and briefs and jury instructions, preparation for direct and cross examination of witnesses, and opening and closing statements.

In connection with its engagement on behalf of EQT, Attorney Dodge represents that EQT paid Meyer Unkovic a negotiated discounted rate and, depending upon the assigned attorney's experience and role, the amount billed was approximately one-third lower than Meyer Unkovic's established hourly rates.[2] Through February 8, 2019, Meyer Unkovic submitted invoices based on time and billing rates totaling $412,313.70, representing 1,942.40 hours for attorney and support staff time. Associated litigation costs, including certain expert witness fees, trial technology expenses, transcripts, and photocopying, were submitted to EQT totaling $148,180.56. These amounts do not include time or expenses that were written off and not submitted to EQT in

---

Pennsylvania with a term commencing June 3, 2019. For purposes of this Opinion, the Court shall refer to Judge Dodge in her prior role as trial counsel.

[2] Attorney Dodge was billed at a discounted hourly rate of $319; Meyer Unkovic partner/senior associates Turner and Bell were billed at a discounted hourly rate of $175, associates Stoy, Carroll and Leonelli were billed at a discounted hourly rate of $165.00, and paralegals Newcomer and Penn were billed at a discounted hourly rate of $136.00.

the exercise of counsel's judgment. EQT has paid all Meyer Unkovic adjusted invoices, and reimbursed Meyer Unkovic for all expenses.

EQT has also submitted a Declaration from Nicolle R. Snyder Bagnell, a partner at Reed Smith, who served as co-lead counsel for Reed Smith and, with Lucas Liben, performed and directed Reed Smith's extensive work on the case from its inception, with primary responsibility through the close of fact discovery. ECF No. 343-1. Reed Smith is a multi-state, multinational law firm, with significant experience representing energy and natural resource clients. Attorney Bagnell has nearly twenty years of experience counseling and litigating on behalf of energy industry clients. Attorney Liben is an attorney with approximately nine years of experience, specializing in oil and gas industry litigation. Liben was elevated to partner at Reed Smith shortly before the commencement of trial. Attorneys Bagnell and Liben directed a team of approximately three dozen counsel, associates, e-discovery attorneys, paralegals and other staff who were engaged on behalf of EQT. Attorney Bagnell represents that fees for all participating Reed Smith attorneys were discounted 15% through 2018. Reed Smith invoiced EQT 6,241.50 hours for a total of $1,508,509.36 in fees.[3] In addition, Reed Smith incurred costs and expenses of $706,355.17 in the defense of this matter, including expert witness fees and expenses, deposition transcripts, trial technology costs, and fees related to a jury consultant. As of the date its motion was filed, EQT has paid all amounts invoiced through December 2018.

Orion filed a nine (9) page Brief in Opposition to the instant Motion. ECF No. 382. Orion opposes the instant Motion of two grounds. First, Orion argues that EQT failed to carry its burden

---

[3] Attorney Bagnell billed at an effective discounted hourly rate of $403.75; Attorney Liben billed at a discounted hourly rate of $289.00; Attorney Mahfood, a 2012 law school graduate, billed at a discounted effective hourly rate of $289.00; Attorney Thompson, a 2015 law school graduate, billed at an effective discounted hourly rate of $295.00; staff attorneys and paralegals were billed at effective hourly rates ranging from $76.50 per hour to $170.00 per hour.

4

to show that the attorneys' fees were reasonable because: (a) Meyer Unkovic and Reed Smith redacted certain invoices, and (b) EQT took cumulative and duplicative discovery on undisputed or irrelevant issues. ECF No. 382 at 2-5. Second, Orion argues that EQT failed to carry its burden to prove that its costs were reasonable because: (a) EQT failed to provide a breakdown of costs, (b) the expert fees of Charles Stone were unreasonable, and (c) the expert fees of Robert Overbaugh were unreasonable. Id. at 5-8. Orion does not provide any counter-declarations to support its opposition.

EQT has filed a Reply Brief in Support of Motion for Attorneys' Fees and Related Costs, ECF No. 384. The Motion is ripe for resolution.

## II. STANDARD OF REVIEW

"Under Pennsylvania law, '[c]ounsel fees are recoverable only if permitted by statute, clear agreement of the parties, or some other established exception.'" Norfolk S. Ry. Co. v. Pittsburgh & W. Virginia R.R., 101 F. Supp. 3d 497, 540 (W.D. Pa. 2015), aff'd, 870 F.3d 244 (3d Cir. 2017) (quoting Knecht, Inc. v. United Pac. Ins. Co., 860 F.2d 74, 80 (3d Cir. 1988)). When a contract provides for an award of attorney's fees to the prevailing party, "the trial court may consider whether the fees claimed to have been incurred are reasonable, and [] reduce the fees claimed if appropriate." McMullen v. Katz, 985 A.2d 769, 777 (Pa. 2009).

"The party seeking attorney's fees has the burden to prove that its request for attorney's fees is reasonable. To meet its burden, the fee petitioner must 'submit evidence supporting the hours worked and rates claimed.'" Rode v. Dellarciprete, 898 F.2d 1177, 1183 (3d Cir. 1990) (quoting Hensley v. Eckerhart, 461 U.S. 424, 422 (1983)). The district court must also consider the amount and character of the services performed, the difficulty of the problems involved, and the amount of money or value of the property in question. Toshiba America Medical Systems,

5

Inc. v. Valley Open MRI and Diagnostic Center Inc., 674 F. App'x 130, 133 (3d Cir. 2016) (citing McMullen, 985 A.2d at 774). Other factors to be considered include the results obtained, the professional skill and standing of the attorney, the nature and length of the litigation, the responsibilities of the parties in affecting the nature and length of the litigation, and the competitiveness of the rate and time expended. City of Scranton v. Davis, No. 16-1727, 2018 WL 3126443 (M.D. Pa. June 26, 2018) (citing McMullen, *supra*; In re LaRocca's Tr. Estate, 246 A.3d 337, 339 (Pa. 1968); and citing Arches Condo Ass'n v. Robinson, 131 A.2d 122, 131-32 (Pa. Commw. Ct. 2015)).

While "[t]he district court cannot 'decrease a fee award based on factors not raised at all by the adverse party,'" the court has a great deal of discretion to adjust the fee award in light of objections. Rode, 892 F.2d at 1183 (internal citation omitted).

### III. DISCUSSION

#### A. Reasonableness of Attorneys' Fees

##### 1. Time Expended

The United States Court of Appeals for the Third Circuit has observed that "[t]he most useful starting point in determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Rode, 892 F.2d at 1183. "Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary. Further, the court can reduce the hours claimed by the number of hours 'spent litigating claims on which the party did not succeed and that were 'distinct in all respects from' claims on which the party did succeed.' The court also can deduct hours when the fee petition inadequately documents the hours claims." Id. (internal citations omitted).

Meyer Unkovic and Reed Smith have provided detailed billing records reflecting a total of 8,183.90 hours expended by nearly four dozen attorneys and support staff timekeepers in the course of two and one-half years in defense of this action. Billing records include line item summaries of tasks performed by each timekeeper from receipt of the Complaint through trial of this matter, and disclose time devoted to preparation of written discovery, expert and fact witness depositions, legal research of claims and defenses, discovery and trial related motions, trial preparation and trial.

In considering whether the number of hours devoted to the litigation of Orion's claims is reasonable, the Court also weighs Orion's demand for liquidated damages exceeding $32,000,000, the need to investigate drilling operations conducted by multiple contractor-employees for a period of over 18 months, the number of safety incidents placed at issue, and the functional operation of two complex and allegedly defective drilling rigs. Given EQT's potential liability and the complexity of the relevant facts and legal theories at issue, it is worth noting that EQT's motion seeks an award of fees and costs in an amount less than ten percent of the damages claimed by Orion.

**2. Redaction of Invoices**

Orion objects to 434 billing entries and associated fees of $400,889 because counsel redacted descriptions of the work performed. Orion contends that the redactions render it impossible to determine the reasonableness of the requested sums. EQT responds that the redactions are necessary to protect attorney work product and attorney-client privilege, and were minimal in nature. EQT further points out that Orion has not identified a single time entry that has prevented it from assessing the reasonableness of attorneys' fees. In addition, EQT notes that only 6 entries in 604 pages of invoices were redacted in their entirety.

The Court has thoroughly reviewed the billing records and finds Orion's objections lacking merit. Of the thousands of entries contained in the 604 pages of invoices supplied to the Court, nearly all redactions permit an understanding of the task performed and the time expended by reference to the surrounding text. It is apparent that the redacted information includes the names of potential witnesses or legal theories that may have been investigated and abandoned. As an example, on August 30, 2018, Attorney Liben billed 6 hours to:

> [m]eet with T. Lawson before deposition and attend and participate in same; email client re: same; review A. Mahfood memorandum re: [redacted] and internal communications re: same; internal communication re: documents provided to expert; call with Edge and e-mail with N. Bagnell re: same.

On December 4, 2018, Attorney Dodge:

> Continued discussion and revisions to motions in limine responses, Ray and Stone briefs and Hooper brief; review and discuss jury designations; communications regarding [redacted]; communications regarding mock jury; review brief re additional legal issues.

The redacted material does not detract from the Court's ability to determine the nature of the work performed or that the work was performed in pursuit of the defense of this action. Counsel for EQT has offered to provide the Court with unredacted billing records to confirm the case-related content of each entry, but the Court finds no reason to challenge the integrity of counsel with respect to billing records submitted to and paid by EQT, and Orion proffers none. Accordingly, the minimal redactions in billing do not warrant any reduction in attorneys' fees. See Washington v. Phila. County Court of Common Pleas, 89 F.3d 1031, 1037-38 (3d Cir. 1996) (citation omitted) (it is not required to know "the precise activity to which each hour was devoted" nor is it required that "records be kept by task—e.g., for each motion, issue or part of the case); Pasternack v. Klein, No. 14-2275, 2017 WL 4642283 (block billing that is detailed enough to allow the Court to

8

determine whether a reasonable amount of time is devoted to each task is sufficient, where the nature of the activity is identified and the participants involved).

### 3. Depositions

Orion next challenges approximately $135,000 in legal fees associated with fact depositions related to the cause of each dropped block incident, Orion's safety and training programs, and performance issues with Rig 17 and Rig 18. Orion posits that because it did not deny that each safety incident occurred, discovery into each incident was unnecessary or was redundant. Further, discovery related to employee safety and training was irrelevant to EQT's theory at trial, which was grounded in the unsafe nature of each drilling rig.

Upon review, it is apparent that the complained of depositions and discovery are related to EQT's theory that Orion was incapable of identifying and curing systemic IDS control system defects, despite its representations to the contrary, and that Orion otherwise failed to conduct safe drilling operations according to appropriate industry standards. ECF No. 384 at 6-7. It is apparent that the witnesses identified by Orion as redundant or unnecessary testified as to the extraordinary peril caused by a dropped block incident, or could describe the mechanism of rig failure, or could explain the failings of Orion's attempted cures. Id. While the occurrence and isolated cause of each incident are not disputed, this discovery was necessary to investigate the relationship of each incident as symptomatic of overall control system deficiencies and to counter Orion's position that the rigs merely "malfunctioned." In light of the complexity of the issues and theories presented by each party, which this Court is most familiar, the fees associated with this discovery, integral to EQT's defense, are reasonable and appropriately documented.

### B. Reasonableness of Attorney Hourly Rates

"After determining the number of hours reasonably expended, the district court must examine whether the requested hourly rate is reasonable. Generally, a reasonable hourly rate is to be calculated according to the prevailing market rates in the relevant community." Rode, 892 F.2d at 1177. In review of Orion's Brief in Opposition, it is significant to recognize that Orion does not challenge the rates charged by attorneys, paralegals, or other support staff in this matter, which the Court finds appropriate given the skill, experience, and reputation of EQT's counsel. In this regard, EQT is a sophisticated entity that negotiated and paid discounted rates for all attorneys and staff members employed in its representation. The resulting rates are less than comparable rates for national and international complex commercial litigation firms based in Western Pennsylvania and a reduction in the rates charged and paid by EQT is not warranted. Accordingly, the Court finds that in the context of this particular case, the hourly rates are reasonable.

### C. Reasonableness of Costs

#### 1. Documentation

Orion objects to insufficiently documented costs, including as related to EQT's retention of Dr. Justin Ray, Charles Stone, and a jury consultant. Without appropriate billing records, Orion states the reasonableness of these costs cannot be assessed. As such, Orion requests that the Court disallow the $706,355.17 in costs incurred by Reed Smith on behalf of EQT.

In response to Orion's objections, EQT has filed the necessary underlying expert invoices and documentation, and accordingly has submitted sufficient evidence supporting the expenses incurred. ECF Nos. 384-1, 384-2.

## 2. Expert Fees of Charles Stone

EQT retained the services of Charles Stone and his firm, Sigma Engineering Corp., to consult and testify relative to drilling industry standards. ECF No. 343 at 20. Orion challenges both the necessity and reasonableness of expenses related to Charles Stone and his firm. Orion contends that Stone's fees of $378,04.66 are patently unreasonable given the limited scope of his testimony at trial regarding industry standards for safe rig operation and non-productive time ("NPT"). ECF No. 382 at 5-7. The invoices submitted to the Court indicate that Stone and Sigma commenced their engagement on behalf of EQT in July 2017, and provided professional engineering and project management support and expertise to inform the development of EQT's defense of this action. It is apparent that Stone and Sigma reviewed all evidence and data obtained in discovery regarding Rig 17 and Rig 18 operation and safety incidents, and advised counsel with regard to technical information obtained from various Orion, EQT and third-party witnesses.

The Third Circuit has held that expert fees, even for those who do not testify, are compensable costs where the expert "serve[s] to 'educate counsel in a technical matter germane to the suit.' It is not unreasonable to expect that attorneys will rely on experts to educate them as to scientific and technical issues involved in a given case." Interfaith Community Organization v. Honeywell Intern., Inc., 426 F.3d 694, 716-17 (3d Cir. 2005). In this instance, while Reed Smith is engaged in the representing oil and gas industry clients, attorneys would not be expected to have the technical knowledge necessary to identify computerized control system defects, or know and apply industry standards for safety, operation, and performance of drilling rigs. Given the complex and technical issues involved in this case, engaging professional engineers with an expertise in drilling and industry standards to aid and inform the defense is appropriate.

The Court is required, however, to review the invoices in detail to determine the reasonableness of the charges for the work performed. Id. at 714. In this case, it is evident that Sigma Engineering devoted several professional engineers and project managers to review and provide in-depth analysis and research related to the operation of Rigs 17 and 18; compile and review and explain data received by counsel in discovery; review witness depositions and daily drilling reports; determine NPT; and prepare graphic tables and exhibits analyzing the data. The information obtained was compiled into a comprehensive expert report written by Stone with the assistance of staff engineers. The report included an analysis of the integration of rig systems, Bonitron and brake systems, mechanical failures, and a chronology of incidents on each rig. In addition, the report detailed "specific mechanical failures, including BOP, catwalk, brakes, Bontitron system, gen-sets, pumps, and top drive." ECF No. 384-2 at 11. Sigma engineers and project managers assisted Stone in the review of Orion expert materials and reports, and assisted in the preparation of counsel for depositions of all EQT and Orion experts. Id. at 12-19. Stone prepared for his own deposition and for trial testimony. While certain pre-trial items are redacted to protect privileged information, the costs incurred related to these items are in the days immediately before trial, and there is no suggestion that fees billed and paid by EQT were not charged for this litigation.

In terms of rates charged, Sigma's professional engineers were invoiced at rates between $300 and $400 per hour, with research analysts and "degreed engineering support" personnel invoiced at $150 per hour. See, e.g., ECF No. 384-2 at 2, 9, 14, 17. Stone's rates were higher for testifying, and were invoiced at $500 per hour, and EQT was billed for appropriate travel expenses. In total, for the period June 2017 through December 2018, Sigma and Stone charged EQT approximately $380,144.99.

Although Orion objects to these sums as excessive, it has not provided the Court with information indicating that the rate per hour for highly qualified engineering staff is excessive, or that any particular billing entry is duplicative or is otherwise procedurally inappropriate. Orion instead challenges whether the facts reviewed or conclusions reached were disputed or required expert analysis. ECF No. 382 at 6. It is apparent from the time entries, however, that Stone's comprehensive review informed EQT's theory that Orion's operation of Rigs 17 and 18 violated oil and gas industry standards for safety, due diligence, and workmanship reasonably expected from an experienced contractor in the drilling industry.

In sum, in the absence of information challenging the hourly rate, the Court finds that the expert fees charged by Stone and Sigma Engineering were reasonable and necessary in the defense of this action.

### 3. Expert Fees of Dr. Justin Ray

EQT retained the services of Justin Ray, Ph.D., and Edge Case Research to consult and provide testimony relative to the software and safety-related systems of the drilling rigs at issue. ECF No. 343 at 10. Orion challenges the reasonableness of the expert fees of Dr. Ray on the ground that EQT did not produce copies of invoices for the work he performed. Again, in response to Orion's objections, EQT has filed the underlying expert invoices and documentation. ECF Nos. 384-1, 384-2.

The Court finds the fees related to Dr. Justin Ray both necessary and reasonable. The evidence at trial established that Orion was unable to accurately determine the root cause of each dropped block incident so to prevent additional incidents. EQT retained Ray to investigate each incident to determine if it was related to defects in the IDS control system and software, and to

explain his findings to counsel, the Court and the jury. In light of the importance of his testimony to EQT's defense, Ray's fees of $79,560.00 are not unjustified or excessive.

### 4. Expert Fees of Robert Overbaugh

EQT retained the services of Robert Overbaugh and Sisterson Co. LLP, a firm of certified public accountants, relative to the calculation of breach of contract damages. ECF No. 343 at 10. Orion challenges costs related to expert fees charged by Robert Overbaugh and Sisterson. ECF No. 382 at 7-8. Orion contends that approximately two-thirds of Overbaugh's fees were unnecessarily incurred in pursuit of EQT's theory that Orion's recovery, if any, was limited to lost profits. Orion states that because this alternative theory was rejected by the Court, EQT is not entitled to recovery of these sums. In addition, Orion contends that certain of Overbaugh's fees are related to a mathematical calculation of liquidated damages that was largely uncontested. EQT responds that because the Court did not rule on its lost profit theory until four days before trial, the sums expended on its alternative damages theory were reasonable and necessary. ECF No. 384 at 12-13. Further, fees associated with calculating liquidated damages were appropriate due to a difference of $76,000 in the parties' calculations. Finally, Orion's blanket fee reduction fails to account for expenses associated with Overbaugh's review of Orion's supplemental report from its damages expert shortly before trial. Id.

The Court has reviewed the record in this regard, and finds that the expenses and fees associated with Overbaugh are reasonable and were necessarily incurred in pursuit of EQT's damages calculations, including its theory regarding limitations on recovery of liquidated damages. That EQT's theory on the issue of liquidated damages was ultimately unsuccessful does not render the expenses unreasonable or unnecessary, in light of EQT's overall success in litigating the claims against it.

### 5. Jury Consultant Fees

EQT's jury consultant charged a flat rate of $40,000 plus expenses of $25,716.67 related to travel, facility rental, and prospective juror incentives. Orion has not suggested that these sums are unnecessary, excessive or unreasonable, and the Court finds these sums appropriate to the trial of a case valued in excess of $32,000,000 dollars.

### IV. CONCLUSION

For the foregoing reasons, Defendant EQT's Motion for Attorneys' Fees and Related Costs is properly granted. Accordingly, the following Order is entered:

### ORDER

AND NOW, this 10th day of September, 2019, upon consideration of EQT's Motion for Attorneys' Fees and Related Costs, ECF No. 342, and the briefs and exhibits in support and in opposition thereto, and pursuant to Fed. R. Civ. P. 54(d), and for the reasons set forth in the accompanying Opinion, IT IS HEREBY ORDERED that EQT's Motion is GRANTED, and attorneys' fees in the amount of $1,920,823.06, and related costs in the amount of $854,535.73 are awarded to Defendant EQT Production Company and against Plaintiff Orion Drilling Company, LLC. Plaintiff must pay these attorneys' fees and costs on or before November 12, 2019.

BY THE COURT:

MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc: All counsel of record via CM/ECF